UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
PIKEVILLE

CIVIL ACTION NO. 03-210

MELISSA MARTIN,                                                                    PLAINTIFF,

v.                                              **OPINION & ORDER**

BOARD OF EDUCATION OF KNOTT
COUNTY, KENTUCKY, et al.,                                                  DEFENDANTS.

\* \* \* \* \* \* \* \* \* \*

This matter is before the Court on the Motion to Alter or Amend Judgment (Rec. No. 57) filed by the Plaintiff Melissa Martin ("Martin") and various other motions.

### I.     BACKGROUND.

Martin was employed by the Knott County School System.  She filed this action under 42 U.S.C. § 1983 asserting that the Board of Education of Knott County (the "Board) and its Superintendent Harold Combs demoted her from a district counselor position to classroom teacher in retaliation for her political associations in violation of her First Amendment rights of free speech, expression and association.  Specifically, Martin claims the Defendants demoted her in 2003 because she voted for her neighbor, Ray Gibson, in a school board election in 1996. She named the Board and Superintendent Combs, in his individual and official capacities, as Defendants.

In addition to her First Amendment retaliation claim, Martin asserted that, by demoting her, the Defendants violated the Kentucky constitution and KRS. § 161.164, a Kentucky statute which specifically prohibits school board employees and teachers from being discriminated against because of their political opinions. Martin also asserted that the Defendants violated other Kentucky statutes (KRS § 161.765(2); KRS § 61.800 and KRS § 161.760) by demoting her without complying with

certain state procedural requirements.  The Board and Superintendent Combs moved for summary judgment on all claims.

This Court granted the Defendants summary judgment with respect to Martin's First Amendment retaliation claim, finding that Martin had failed to establish a *prima facie* case.  (Rec. No. 53, Opinion and Order).  The Court found that Martin had established the first two prongs of the *prima facie* case because Martin was engaged in a constitutionally protected activity when she voted for Gibson; and she was subjected to an adverse action.

As to the third prong, however, the Court found that Martin had produced no evidence that the protected activity was a substantial or motivating factor in the adverse action. Martin had produced no evidence that, in abolishing Martin's position, any Board member had considered Martin's vote in any election or any matter not presented at her lengthy demotion hearing.  In fact, the Court noted, Martin had not even alleged that any Board member demoted her because she engaged in constitutionally protected activity.

Instead, Martin had only alleged that Superintendent Combs retaliated against her because she voted for her neighbor Ray Gibson for the Knott County School Board.  While on the Board, Ray Gibson had voted not to renew Superintendent Combs' contract.  Thus, according to Martin, Superintendent Combs had personal animosity toward Ray Gibson and those who voted for him.

However, the Board and not the Superintendent made the final decision to abolish Martin's district counselor position. In her response to the Motion for Summary Judgment Martin did not allege that the Board had demoted her merely because the Superintendent recommended that it do so.  Nor had Martin alleged any other basis for a finding that the Superintendent had actually caused the adverse employment action in this case. Accordingly, the Court dismissed Martin's § 1983 claim

2

against the Board and Superintendent Combs and, in its discretion, dismissed without prejudice Martin's state law claims.

## II.     MOTION TO ALTER, AMEND.

Martin now moves the Court to Alter or Amend its Opinion and Order.  Martin argues that the Court erred in granting the Defendants Summary Judgment because she now has evidence that three members of the Board demoted Martin simply because Superintendent Combs  recommended it.  Martin also alleges that she now has evidence that shows that Superintendent Combs presented the Board with artificially lowered testing numbers in order to cause the Board to abolish Martin's district counselor position.

### A.     Board Liability Requires Proof that the Board Itself Retaliated or that the Superintendent was Final Policymaker.

Martin cannot base her claim against the Board solely on Superintendent Combs' conduct. *Doe v. Claiborne County*, 103 F.3d 495, 507 (6th Cir. 1996).  Rather, Martin must show that the Board itself was the wrongdoer. *Id.*  This is because political subdivisions like the Board[1] cannot be held liable under § 1983 for the actions of its employees on a *respondeat superior* theory. *Id.* (citing *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 691 (1978)). Under *Monell*, the Board can incur § 1983 liability only if Martin can establish that an officially executed policy, or the toleration of a custom within the school district leads to, causes, or results in the deprivation of a constitutionally protected right. *Id.* (citing *Monell*, 436 U.S. at 690-91).

Martin has presented no evidence that the Board tolerated a custom of retaliation in the

---

[1] Local school boards are political subdivisions and, therefore, are not immune from damage suits under the Eleventh Amendment. *Ghassomians v. Ashland Independent School District*, 55 F.Supp.2d 675, 682 (E.D. Ky. 1998); *M.W. v. Madison County Board of Education*, 262 F.Supp.2d 737, 743 (E.D.Ky. 2003).

3

school district nor has she alleged than any such custom exists. As discussed, while the Board's vote to abolish Martin's position may be considered an officially executed policy, Martin produced no evidence in her response to the party's Motions for Summary Judgment that her protected activity of voting for Gibson was a substantial or motivating factor in any Board member's vote.

There are cases, however, where a political subdivision like the Board has itself been held liable for retaliation under § 1983 even though there is no evidence that the board members were motivated by a plaintiff's protected activity. In *Beattie v. Madison County School District*, 254 F.3d 595 (5th Cir. 2001), the Fifth Circuit stated that the improper motives of a superintendent could be imputed to the board of education where the superintendent was a "final policymaker." *Id.* at 601-03. This is because, "a single action by a municipal official possessing final policymaking authority regarding the action in question constitutes the official policy of the municipality." *Id.* at 602. *See also, Adkins v. Board of Education of Magoffin County, Ky.*, 982 F.2d 952, 957 (6th Cir. 1993)( The single act "of a local official may be sufficient to establish the unconstitutional policy of the governing body" but "only local officials who have 'final policy making authority' may subject the local governing body to § 1983 liability."); *McMillian v. Monroe County, Ala.*, 520 U.S. 781, 784-85 (1997).

Likewise, in *Hickman v. Valley Local School District Board of Education*, 619 F.2d 606 (6th Cir. 1980), the Sixth Circuit held that a school board may be liable for intentional retaliation even where there was no evidence that the protected conduct motivated the board itself to vote for the adverse action. In *Hickman*, a school principal recommended to the superintendent that a teacher's contract not be renewed and the superintendent, in turn, recommended nonrenewal to the school board. *Id.* at 607. The board voted for nonrenewal. *Id.* The teacher filed a complaint, charging that

the nonrenewal of her contract was in retaliation for her constitutionally protected union activities.

The *Hickman* Court determined that the teacher would not have been dismissed but for her union activities. *Id.* at 609. A majority of the board members stated that they voted against renewal *solely* on the basis of the superintendent's recommendation. *Id.* at 607-08. The Court thus determined that:

> The evidence does not demonstrate that the Board was insulated from the principal's or superintendent's reasoning or that the Board reached its decision on the basis of independent, intervening factors. Where this line of causation exists, and the principal or superintendent predicated their recommendations on constitutionally impermissible reasons, these reasons become the bases of the decision by the Board members. Therefore, we hold that defendants dismissed Hickman for constitutionally impermissible reasons.

*Id.* at 610; *See also Saye v. St. Vrain Valley School District RE-1J*, 785 F.2d 862, 867 (10th Cir. 1986)(holding that where school board members "stated by deposition that they had relied *completely* on the recommendations of the administration" in voting not to renew a teacher's contract, the board itself could be held liable). The Court presumes that the basis for board liability for retaliation in cases such as *Hickman* and *Saye* where there is no evidence that the board members themselves were actually motivated by the protected activity, is that, like the *Beattie* Court discussed, the retaliatory recommender in those cases is viewed as a final policymaker for the board itself.[2]

In her Motion, however, Martin appears to argue that the Board may be liable under § 1983 for the Superintendent's retaliatory motives even where the Superintendent is not a final policymaker

---

[2]Furthermore no defendant may be liable for retaliation without a showing that the defendant himself was motivated to inflict an adverse action upon the plaintiff because of the plaintiff's constitutionally protected activity. "Retaliation is, by definition, an intentional act." *Jackson v. Birmingham Bd. of Educ.*, 125 S.Ct. 1497, 1504 (2005). "[A]t the core of a case of retaliation is the intent to impede the exercise of a constitutional right." *Crocker v. Tenn. Secondary School Athletic Ass'n*, 980 F.2d 382, 387 (6th Cir. 1992). Board liability requires some proof that the board itself – through its final policymakers – acted out of retaliation. Thus, the prima facie case against the Board requires proof that Martin's vote for Gibson – the constitutionally protected activity – motivated the Board itself – not some other defendant – to vote for her demotion.

5

causing the adverse action if the plaintiff can show that the Superintendent "somehow influenced" the Board.  Here, Martin cites to *Noble v. Brinker Intl.*, 391 F.3d 715 (6th Cir. 2004).  In *Noble,* the defendant was a private corporation and the plaintiff asserted federal claims under 42 U.S.C. § 1981 and 42 U.S.C.§ 2000e ("Title VII").  In determining whether one manager's racial animus could be imputed to a succeeding manager for purposes of these claims,  *Noble* relied on *Christian v. Wal-Mart Stores, Inc.*, 252 F.3d 862 (6th Cir. 2001) and *Wilson v. Stroh Cos.*, 952 F.2d 942, 946 (6th Cir. 1992).  *Id.* at 723.  Again, those cases did not involve a § 1983 claim against a municipality.  Accordingly, the Court does not find these cases applicable to the issue of when a political subdivision like the Board may be liable under § 1983 for the acts of a nonmember.

As support for her argument that the Superintendent's retaliatory motives may be imputed to the Board, Martin also cites to *Delisle v. Brimfield Township Police Department*, 94 Fed. Appx. 247 (6th Cir. 2004), an unpublished decision. Again, however, the discussion in that case primarily centers around the plaintiff's Title VII claim.  *Id*. at 251-57.  As the Sixth Circuit stated in another unpublished decision, a municipality may be held vicariously liable for the acts of employees under Title VII.  *Biver v. Saginaw Township Community Schools*, 878 F.2d 1436 at *3  (6th Cir. 1989).

In *Biver*, the Sixth Circuit noted that the standards for school district liability under §1983 and Title VII are "very different." *Id.*  This is because under § 1983 there is no various liability for municipal entities based on the actions of their non-policy-making employees.  Under Title VII, however, vicarious liability of an employer for acts of employees is possible and intentional discrimination and retaliation are prohibited regardless of whether they are part of an official policy.  *Id*.

When discussing the Plaintiff's First Amendment retaliation claim against the municipal

6

defendants, the *Delisle* Court does not discuss the unavailability of vicarious liability or respondeat superior liability.  Accordingly, the Court does not find *Delisle* persuasive authority on the issue of when a political subdivision like the Board may be liable under § 1983 for the retaliatory acts of a recommender even where the Board itself was not motivated to act because of the plaintiff's protected conduct.

Furthermore, in *Delisle*, the plaintiff claimed he was demoted by the township's board of trustees because he had complained of religious discrimination.  The plaintiff produced evidence that, prior to the demotion, he had complained of religious discrimination directly to one of the trustees.  *Delisle*, 94 Fed. Appx. at 254.  Further, the Court noted that the trustees failed to remedy the situation after the plaintiff made an informal complaint to one of them. *Id*. at 255.  There was also evidence that the trustees told the supervisor to "build a file" to support the plaintiff's demotion. *Id.* at  250. Thus, there was evidence in *Delisle* that the board of trustees itself was made aware of the plaintiff's protected activity and that it later took steps to cause the plaintiff's demotion.

The Court concludes that, because a board such as the Defendant in this case may only be liable for its own policies or customs,  it may be liable for a retaliatory superintendent's actions only upon evidence that the superintendent essentially acted as the board's final policymaker in the decision to inflict an adverse action upon a plaintiff.

As this Court noted in its Opinion and Order granting the Defendants summary judgment, Martin had produced no evidence that Superintendent Combs was essentially the final policymaker in this case.  There was no evidence that the majority of the Board members was solely or completely motivated to abolish Martin's district counselor position on the basis of Superintendent Combs' recommendation as in *Hickman* and *Saye*.  Instead, the Court noted, the evidence was that the Board

7

based its decision on independent, intervening factors, i.e., evidence presented at the demotion hearing regarding the continued need for the position. There was no evidence that the Board cared about whether Martin had voted for her neighbor Ray Gibson or not.

In her Motion to Alter or Amend the Judgment, Martin argues that the Court should amend its Judgment because she now has sufficient evidence that the Board itself – not just Superintendent Combs – demoted Martin because of her vote for Gibson and/or that the Board voted to demote Martin because Superintendent Combs recommended it.  Martin argues that she did not produce this evidence in response to the Defendant's Motion for Summary Judgment because, in their motion, the Defendants did not raise the issue of whether Martin's vote substantially motivated the Board to demote her. Martin also argues that some of this evidence has only been produced by the Defendants since filing the Motion for Summary Judgment.

As an initial matter, the Court notes that, in their Motion for Summary Judgment, the Defendants did argue that Martin had failed to establish a causal connection between her constitutionally protected activity and the decision to abolish her district counselor position.  (Rec. No.17, Mem. Supp. Summ. J. at 17-18). Likewise, in her response to the Defendants' motion, Martin argued that she had sufficient evidence to establish that the adverse action was motivated by her protected conduct.  (Rec. No. 24, Response at 14-16).  It is unclear why Martin did not expect the Court to rule on this issue.

As to whether the Court should have ruled on the Motions for Summary Judgment while discovery was ongoing, Martin never argued in her response to the motion that summary judgment was premature because discovery was ongoing.  Nevertheless, the Court will consider the "new" evidence presented by Martin in her current motion that the Board itself acted out of retaliation when

8

it voted to demote her and/or that it voted to demote Martin because Superintendent Combs recommended it.

### 1)    New Evidence – Deborah Watts' Affidavit.

The only "new" evidence presented by Martin in her Motion to Alter or Amend, is the affidavit of Deborah Watts, who was Board chairperson at the time of Martin's demotion hearing. (Rec. No. 57, Motion to Alter, Ex. A, Watts' Aff.). The affidavit is signed on April 11, 2005. For the following reasons, the Court will not consider this affidavit for purposes of determining whether the Defendants are entitled to summary judgment.

Martin does not provide any explanation as to why she could not have obtained Watts' affidavit for her response to the Motion for Summary Judgment. In the interest of finality and judicial efficiency, the Court declines to accept post-ruling affidavits where no explanation is offered as to why the affidavit could not have been obtained prior to the Court's ruling on the subject of the affidavit.

Moreover, the affidavit was signed after the Court's ruling on the Motions for Summary Judgment and contradicts Watts' own prior deposition testimony. In her prior deposition testimony, Watts confirmed that, in making the decision to abolish Martin's position, she and the Board "were acting in the best interests of Knott County schools." (Rec. No. 21, Ex. 3, Watts Dep. at 12). When asked, "was it your understanding by abolishing the position that it would save the district money?," Watts stated, "Yes, we were told it would save the district forty-some thousand." (Rec. No. 21, Ex. 3, Watts Dep. at 12). When asked whether, it was her understanding that abolishing the position, "was a good economic move or was it something done to try to hurt Ms. Martin, Watts stated, "As far as I know, it was an economic move." (Rec. No. 21, Ex. 3, Watts Dep. at 13). Watts testified

that both Superintendent Combs and Special Education Director Sandy Bailey recommended to the Board that Martin's district counselor position be abolished.  She stated that the hearing went very late and there was a very long deliberation until 1:00 or 2:00 a.m. (Rec. No. 21, Ex. 3, Watts Dep. at 7).

In contrast, in her affidavit, Watts states that Board members Gayheart, Martin and Roberts were aware Combs wanted to demote Martin and insisted on upholding the demotion despite evidence at the hearing that the district could better serve the students by keeping the position, abolishing the position would not really save the district money, and the Superintendent had not considered doing away with any of the other multiple testing providers.  (Rec. No. 57, Motion to Alter, Ex. A, Watts Aff. ¶ 6). Watts states that these Board members voted for Martin's demotion because they supported practically any proposal that Superintendent Combs made to the Board and did not question his recommendations.  (Rec. No. 57, Motion to Alter, Ex. A, Watts Aff. ¶ 5). Watts states that these three Board members would vote for whatever Superintendent Combs asked the Board to do.  (Rec. No. 57, Motion to Alter, Ex. A, Watts Aff. ¶ 7).

Watts gives no explanation for her change in testimony.  The interests of finality and judicial efficiency are not served by the filing of post-summary judgment affidavits that address deficiencies in evidence identified by the Court in its ruling. This is especially true when – without any explanation– the post-summary judgment affidavit contradicts the witness's deposition testimony that the Court considered when ruling on the motion for summary judgment.

With regard to affidavits filed in response to a motion for summary judgment, the Sixth Circuit has ruled that, a party may not create a factual issue by filing an affidavit, after a motion for summary judgment has been made, which contradicts the witness' earlier deposition testimony. *Peck*

*v. Bridgeport Machines, Inc.*, 237 F.3d 614, 619 (6th Cir. 2001)(quoting *Reid v. Sears, Roebuck and Co.*, 790 F.2d 453 (6th Cir. 1986).  Likewise, the Court should not accept an affidavit contradicting a witness' prior deposition testimony that is filed after the actual ruling on the summary judgment.

 2) **Evidence Previously Filed in the Record.**

 In her current motion, in arguing that the Board itself retaliated against her, Martin also cites to the evidence discussed below that was contained in the record at the time of the Motions for Summary Judgment.

 a) **Doug Gibson's Deposition.**

 Martin cites to the deposition of Board Member Doug Gibson as evidence that the Board retaliated against her.  Martin has misconstrued Gibson's deposition.  Gibson stated that, during deliberations, one of the Board Members asked whether the Board had to place Martin back in the district counselor position if it was recreated.  Martin appears to argue that this is evidence that the Board eliminated her position to retaliate against her and with the intention of later placing someone else in the position because it was still needed.

 In his deposition testimony, however, when asked whether the issue of recreating the position was raised as a compromise such as, "We'll recreate the position as long as she's not in it," Gibson replied "I don't think that was no issue with the board.  I don't think. " (Rec. No. 21, Ex. 4, Gibson Dep. at 12).  Gibson said he did not remember why the issue was raised but noted that "we was back there for an hour and I think we just discussed a lot of things. . . ."  (Rec. No. 21, Ex. 4, Gibson Dep. at 14).  Gibson stated he did not think there was any insistence that Martin not be put back in the position if it was recreated. (Rec. No. 21, Ex. 4, Gibson Dep. at 14).

 For her part, in Watts' deposition, when asked whether any Board member asked whether

11

Martin's position could be recreated without putting Martin back into it, Watts testified, "That was not the issue, no." (Rec. No. 21, Ex. 3, Watts Dep. at 7-8). When asked whether that issue was ever even discussed, Watts stated, "No, that was not discussed in our deliberation. The only thing we discussed was if we needed to make it a part-time position instead of having a full-time position because we were told that, really, you know, we didn't need the full-time but we was wondering with the guidelines with the State if we had to have somebody in that position and if they could do it only part-time instead of the full time." (Rec. No. 21, Ex. 3, Watts Dep. at 8). Watts testified that no Board member ever discussed recreating the position without Martin in it. (Rec. No. 21, Ex. 3, Watts Dep. at 8 ).

There is no evidence that Martin's district counselor position has, in fact, been recreated. In her deposition testimony, Watts confirmed that, at the demotion hearing, after the Board came out of deliberations, Watts announced that the Board had voted to uphold the abolishment of Martin's district counselor position but that it would reconsider the issue later in the year. (Rec. No. 21, Ex. 3, Watts Dep. at 9). Watts stated, "[w]e were going to give it so much time to see if it would work in the system and we were going to bring it back up in a Board meeting." (Rec. No. 21, Ex. 3, Watts Dep. at 9).

Watts testified that the Board reviewed the decision to abolish the district counselor position in November or December, 2003 and that Special Education Director Bailey brought papers showing that "all the files were up-to-date and they were getting back everything that they needed and staying on top of everything and that the position was not needed." (Rec. No. 21, Ex. 3, Watts Dep. at 10).

Accordingly, Martin has produced no evidence that Martin's district counselor position was, in fact, necessary and that, after abolishing the position, the Board intended to recreate it and fill it

with someone else.

### b)     Board's Failure to Consider Alternatives to Abolishing the Position.

As evidence that the Board itself demoted Martin in retaliation for voting for Gibson, Martin argues that the Board claimed that they were abolishing Martin's testing position due to decreasing test numbers but that it never considered abolishing any other counselor's position or any outside contractors or simply reducing Martin's position to 185 days. The Board's failure to consider every alternative to abolishing Martin's position is not an indication of retaliatory intent. Further, as stated above, Watts testified that the Board did consider making Martin's position a part-time position. In addition, Watts said that Special Education Director Bailey told the Board that, even after abolishing Martin's position and permitting an outside contractor to perform the testing that Martin had been doing, they would still have to have one person testing at the high school. (Rec. No. 21, Ex. 3 at 15).

As noted in this Court's Summary Judgment, Special Education Director Bailey testified before the Board that she had projected that less than 100 students would have to be tested the following year.  (Rec. No. 21, Defs.' Ex. 6, p. 23). Bailey testified that Martin's salary for the following year would be $61,484 and that the district could have the testing done by contract with a psychologist for $130.00 a report which, for 100 students, would total $13,000, saving the District $48,484.  (Rec. No. 21, Defs.' Ex. 6, p. 23).  The evidence shows that the Board deliberated for approximately two hours before eliminating the position at 1:02 a.m. (Rec. No. 21, Defs.' Ex. 6, p. 130).  It then reviewed the decision again months later.

Accordingly, the evidence shows that the Board considered making Martin's position a part-time position, the need for other counselors and whether an outside contractor could perform the testing for less money.  Thus, this is not a case where the Board conducted perfunctory deliberations

indicating retaliation.

    c)    **Evidence that Abolishing the Position did not Save Money.**

Martin argues that the Board's discriminatory intent is clear because abolishing her position did not actually save any money in the general fund budget since the position's salary was fully funded by special education grant money which could not be used outside the special education budget. Martin further argues that placing a teacher with her experience in the classroom would actually cost the district general fund over $14,000 more than hiring a new teacher with less experience for the teaching position.

Further, it appears that Martin argues that, whether her district counselor position was necessary or not, the Board acted in retaliation when it failed to let her retain her position since her salary was only coming from the special education budget and when it failed to hire a less experienced classroom teacher whose salary would come from the district's general fund.

In an affidavit filed with the Defendants' Response to the Motion for Summary Judgment, Special Education Director Bailey stated that, at the time of the demotion hearing, she explained that the extra money would be used for technology and literacy. (Rec. No. 29, Response, Ex. 1 at 5). "We planned at that time to get as many special education teachers as possible trained in Reading Recovery, and we planned to add as many computers as possible, purchase software and increase utilization of text reader software to assist struggling readers. We did that and are still doing that. The district in fact saved money and that was money was reallocated to better meet student needs." (Rec. No. 29, Response, Ex. 1 at 6). Bailey also testified at the demotion hearing that the extra funds would be used on technology and literacy. (Rec. No. 21, Ex. 6, Demotion Hearing at 92).

Further, Bailey stated that Martin was placed in a teaching position that had to be filled. "At

that time, there was no way of knowing who would have been an applicant. . . or what that person's salary would have been. . .In fact, when [Martin] resigned the classroom position to take a disability leave, it was filled by a Rank 1 teacher with over 30 years of experience." (Rec. No. 29, Response, Ex. 1 at 6).  This Court cannot find that the Board's failure to retain Martin in the district counselor position whether it was needed or not because her salary came from the special education fund is evidence of its retaliatory intent.

### d)  Judy Collins' Deposition.

Finally, Martin cites to the deposition of Judy Collins, the Board secretary, as evidence that the Board itself retaliated against Martin when it voted to abolish her district counselor position. Collins stated that she never understood why Martin's position was abolished.  (Rec. No. 27, Judy Collins Dep. at 17-18).  She testified that, "I think [Board member Doug Gibson] assumed it was because of Ray Gibson." (Rec. No. 27, Judy Collins Dep. at 18).  She testified that she did not know exactly what Doug Gibson told her but that he gave her the "impression" the position was being abolished for politics. (Rec. No. 27, Judy Collins Dep. at 23-24).  She further testified that she assumed it was Sandy Bailey and Superintendent Combs that were attempting to abolish Martin's position. (Rec. No. 27, Judy Collins Dep. at 18).

Even assuming the admissibility of Collins' testimony regarding what Gibson told her, Collins' impressions and assumptions of what Doug Gibson believed are not evidence of what Doug Gibson believed. Gibson himself never stated in his deposition that he believed politics were behind the recommendation to abolish Martin's position.

Furthermore, even assuming Collins clearly stated in her deposition that Superintendent Combs was attempting to get rid of Martin's position for politics, this is still no evidence that the

15

Board itself was abolishing the position for politics. Again, the Board did not simply rubber stamp the Superintendent's recommendation.  It held a lengthy hearing, deliberated for two hours and reviewed its decision months later.  There is no evidence that the Board considered anything other than the evidence presented at the demotion hearing when it voted to abolish the district counselor position.

### B. Superintendent Combs' Individual Liability Requires Proof that he Caused the Adverse Action.

### 1) Liability Based on Recommendation.

Having found that the Board may only be liable for the policies or customs of its final policymakers, the next issue is whether Superintendent Combs may be individually liable under § 1983 for Martin's demotion.[3]  In its ruling on the Motions for Summary Judgment, the Court dismissed the § 1983 claim against Superintendent Combs because the Board made the final decision to demote Martin, not the Superintendent.  As a general rule, "[a]s to causation, only final decision-makers may be held liable for First Amendment retaliation employment discrimination under § 1983." *Johnson v. State of Louisiana*, 369 F.3d 826, 831  (5th Cir. 2004).

In *Beattie*, the Fifth Circuit ruled that where school administrators did not fire the plaintiff directly but only recommended termination to the board, which made the final decision, the administrators could not be liable.  The Court stated that if the administrators did not cause the adverse employment action, they could not be liable  under § 1983 no matter how unconstitutional their motives.  *Beattie*, 254 F.3d at 605.

---

[3] The suit against Superintendent Combs in his official capacity must be dismissed because official-capacity suits are treated as actions against the entity employing the party and not as an action against the party itself. *Creager v. Board of Education of Whitley County, Ky.*, 914 F.Supp. 1457, 1461 (E.D.Ky. 1996).

16

In *Hickman*, however, the Court found that, not just the board, but the a superintendent could be liable for retaliation under § 1983 where the superintendent recommended nonrenewal to the board and the majority of the board members acted solely on the basis of the superintendent's recommendation.  *Id*. at 608.  In such cases, there is a direct "line of causation" between the administrator's retaliatory intent and the adverse action.  *Id*. at 610.  There are no independent, intervening factors other than the recommendation that caused the board to reach its decision. *Id*.

Likewise, in an unpublished decision, the Sixth Circuit stated that "an influential recommender can be liable under § 1983 without being the final decisionmaker, if the recommendations are shown to be sufficiently influential." *Ward v. Athens City Board of Education*, 187 F.3d 639 at *8.

In *Tejada-Batista v. Morales*, 424 F.3d 97 (5th Cir. 2005), the First Circuit also addressed a situation where a firing was the result of sequential actors, "the first actor's motive being unlawful and the second actor's motive at least permissible. In such a case, the first actor may be (and here was) a but-for cause of the firing" *Id.* at 102.  The court framed the issue as "whether the intervening step – a final decisionmaker acting on a permissible ground – should as a matter of policy (not lack of causation) insulate the wrongdoer from liability." *Id*. The First Circuit appeared to find liability for the unlawful first actor because it was "highly unlikely" that absent the first actor's prompting, the firing was inevitable.  *Id.*

The dissent found the majority opinion a "startling anomaly in the established jurisprudence of American compensatory justice – it hold that Plaintiffs may recover damages where it is established without question as a *matter of law* that no action of the Defendants proximately caused the damages for which recovery is allowed."  *Id*. at 103 (Carter, J., dissenting). Judge Carter

dissented on the basis that "[l]aw, not local 'policy' should control the result in this case." *Id.* at 104.

In *Gilbrook v. City of Westminster*, 177 F.3d 839 (9th Cir. 1999), the Ninth Circuit stated that "a subordinate cannot use the nonretaliatory motive of a superior as a shield against liability if that superior never would have considered dismissal but for the subordinate's retaliatory conduct." *Id.* at 855. Nevertheless, the Court stated "[w]e do not hold that a final decision-maker who lacks any improper motive *never* can absolve a subordinate of liability for his or her retaliatory acts, any more than we hold that such a decision-maker *always* can absolve the subordinate. Indeed, we express no opinion as to what the result should be, as a matter of law, if the facts showed that the final decision-maker made a wholly independent, legitimate decision to discharge the plaintiff, uninfluenced by the retaliatory motives of a subordinate." *Id.* at 855.

As discussed above, in her response to the Motion for Summary Judgment, Martin presented no evidence that the Board was motivated to vote for her demotion because the Superintendent recommended it. Instead, the sole evidence was that the Board voted to demote Martin on the basis of the evidence presented at the demotion hearing. Unlike *Hickman*, the evidence showed that the Board made its decision on the basis of independent, intervening factors – evidence presented at the demotion hearing – and, thus, there was no line of causation between any impermissible motives of the Superintendent and the adverse action caused by the Board's vote. Thus, even if the Superintendent recommended Martin's demotion for constitutionally impermissible reasons, there is no evidence that his recommendation was a substantial or motivating factor that caused the Board to vote for the demotion.

### 2)      Liability Based on Presentation of False Evidence.

In her Motion, Martin also argues that the Board voted to demote her because Superintendent

18

Combs presented false evidence to the Board regarding the District's testing requirements. The Court has been unable to locate any cases in which a retaliatory subordinate presents false evidence to the final decisionmaker in order to accomplish an adverse action. The Board itself could not be liable under this theory because there would be no evidence that the protected activity, as opposed to the false evidence, motivated it to vote for the demotion. This is not like the situation in *Hickman* where the superintendent essentially acts as a final policymaker. Instead, Martin's charge is that the Superintendent deceived the Board into voting for Martin's demotion.

Nevertheless, it would seem that the Superintendent could be liable under § 1983 under this scenario because his act of presenting false evidence caused the Board to vote for demotion. In response to the Motion for Summary Judgment, however, Martin presented no evidence that the Superintendent presented false evidence to the Board. In her current motion, Martin now presents what she claims is evidence that at least 36 more tests were conducted in the last five school years than Special Education Director Bailey told the Board at the demotion hearing. Martin states that Bailey told the Board that there were 129 tests performed in 1999-2000, 133 in 2000-01, 171 in 2001-02, and 107 in 2002–03 and that Bailey projected 72 tests for 2003-04. (Rec. No. 57, Motion to Alter at 6).

Thus, Bailey stated that a total of 612 tests had been conducted or were projected for the five–year period. Martin claims her numbers were off by 36. This discrepancy is simply not large enough to establish that the Board was deceived into voting for Martin's demotion on the basis of "false" evidence. Furthermore, Martin has not made any claim against Bailey. Nor has she presented any evidence that Superintendent Combs instructed Bailey to present the false evidence.

In fact, Bailey testified that she approached the Superintendent with data indicating that

testing requirements had decreased because of changes in the population and that she did not know what a full-time tester like Martin would do with fewer numbers of kids to test. (Rec. No. 21, Ex. 1, Bailey Dep. at 66-67). Bailey testified that, based on the information she presented to the Superintendent, he then decided the district counselor position should be abolished. (Rec. No. , Bailey Dep. at 67). There is no evidence that, instead, the Superintendent required Bailey to present false evidence to the Board.

The Court also notes that, according to Board Chairman Watts' deposition testimony, the Board later reviewed its decision to abolish the district counselor position in November or December, 2003 and determined that "the position was not needed." (Rec. No. 21, Ex. 3, Watts Dep. at 10).

Accordingly, Martin has produced no evidence that Superintendent Combs caused her demotion by presenting false evidence to the Board that her district counselor position was not needed. Furthermore, any additional discovery regarding the testing requirements of Knott County for the five-year period at issue will not support Martin's claim against Superintendent Combs since the sole evidence in the record is that it was Bailey who approached the Superintendent with the data regarding the county's testing requirements and later presented the data to the Board. For this reason, Plaintiff's Motion to Compel, Motion for Sanctions/Costs and Motion to Reopen Discovery will be DENIED. (Rec. No. 76).

### III.   CONCLUSION.

For all the above reasons, it is hereby ORDERED that:

1)   Martin's Motion to Alter or Amend Judgment (Rec. No. 57) is DENIED;

2)   Martin's Motion to Compel, Motion for Sanctions/Costs and Motion to Reopen

Discovery (Rec. No. 76) is DENIED;

3)       The Defendants' Motion to Strike Plaintiff's Motion to Compel (Rec. No. 54) is

DENIED as moot;

4)       Plaintiff's Motion to Strike Defendants' Supplemental Response and Second

Supplemental Response (Rec. No. 72) is DENIED;

5)       The Defendants' Motion for Enlargement of Time (Rec. No. 74) is GRANTED; and

6)       This matter is STRICKEN from the active docket of this Court.

This the 3rd day of November, 2005.

**Signed By:**

**_Karen K. Caldwell_**

**United States District Judge**